Palm Harbor Homes, Inc. ("Palm Harbor"), is the defendant in an action pending in the Mobile Circuit Court. It appeals from an order denying its motion to compel arbitration of the plaintiffs' claims. We reverse and remand.
The plaintiffs, Charles Turner and Stephanie Turner, purchased a manufactured home from Palm Harbor Village, a dealership in Pensacola, Florida. The home had been manufactured by Palm Harbor. When they purchased their manufactured home, the Turners signed an arbitration agreement that provides, in relevant part:
 "The parties . . . agree that any and all controversies or claims arising out of, or in any way relating to, the [purchase contract] or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair or sale/disposition of the home . . . will be settled solely by means of final and binding arbitration . . . in accordance with the rules and procedures of the [American Arbitration Association].
 "The parties agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, *Page 296 
the manufacturer of the home . . . as fully as if the manufacturer was a signatory to the [purchase contract]."
On August 18, 1999, the Turners sued Palm Harbor in the Mobile Circuit Court, alleging that it had violated the Magnuson-Moss Act by breaching express and implied warranties it had made to the Turners, and alleging that it had negligently breached a duty to repair the manufactured home. After removing the case to the United States District Court for the Southern District of Alabama, Palm Harbor answered the Turners' complaint and moved to compel arbitration pursuant to the agreement quoted above. The Turners moved the federal court to remand the case to the Mobile Circuit Court, asserting by affidavit that the amount in controversy was less than $75,000. See 28 U.S.C. § 1332. On November 3, 1999, the federal court granted the Turners' motion to remand.
On remand, Palm Harbor renewed its motion to compel arbitration. The Turners opposed the motion on two grounds: (1) that arbitration is barred by the Magnuson-Moss Act, 15 U.S.C. § 2301 et seq., and (2) that, because the arbitration agreement is silent as to the issue of filing fees and apportionment of other fees, it frustrates the remedial purpose of the Magnuson-Moss Act and therefore is unenforceable. The Turners did not dispute that they signed the arbitration agreement and did not dispute that the transaction involved interstate commerce. The trial court denied Palm Harbor's motion to compel arbitration, without an explanation.
Palm Harbor appealed. It contends that both of the arguments the Turners made in opposition to arbitration have been rejected. We agree with that contention, and we agree that the trial court erred in denying the motion to compel arbitration.
The Turners argued to the trial court that the Magnuson-Moss Act precludes enforcement of the arbitration agreement in regard to warranty disputes. They relied on Southern Energy Homes, Inc. v. Lee, 732 So.2d 994
(Ala. 1999), in which this Court had held that the Magnuson-Moss Act invalidates an arbitration provision in a written warranty issued by a manufacturer of consumer goods. However, in Southern Energy Homes, Inc.v. Ard, 772 So.2d 1131 (Ala. 2000), this Court expressly overruled Lee and held "that the Magnuson-Moss Act does not invalidate arbitration provisions in a written warranty." 772 So.2d at 1135.
The Turners argue that Ard should not apply to this case because on August 18, 1999, when they filed their complaint, Lee had not yet been overruled. They contend that the Ard holding should be applied prospectively only, because they contend that they sued in reliance onLee. The United States Supreme Court has adopted the following rule regarding the retroactivity of its decisions:
 "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. . . . In both civil and criminal cases, we can scarcely permit `the substantive law [to] shift and spring' according to `the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule."
Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97 (1993) (citations omitted). This Court has held: *Page 297 
 "Although circumstances occasionally dictate that judicial decisions be applied prospectively only, retroactive application of judgments is overwhelmingly the normal practice. `Retroactivity "is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law. . . . It also reflects the declaratory theory of law, . . . according to which the courts are understood only to find the law, not to make it."' While reliance upon prior law is an `important variable that must be appraised in every case presenting questions of prospectivity,' we conclude that, as a policy matter, the application of this newly adopted rule to these parties `rewards the prevailing party on the appeal, thereby providing "an incentive for litigants to challenge existing rules of law that are in need of reform."'"
Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala. 1997) (citations omitted). We conclude that it is not unfair to apply the rule in Ard retroactively to "all cases still open on direct review." Harper,509 U.S. at 97. Therefore, the Ard decision controls this case. See alsoSouthern Energy Homes, Inc. v. McCray, 788 So.2d 882 (Ala. 2000) (citing Ard to reverse the trial court's order (which had followed Lee), even though Ard was released two months after the trial court in McCray had entered its order).
The Turners also argued to the trial court that, because the arbitration agreement is silent on the issue of "filing fees and apportionment of other fees, it is unenforceable because it frustrates the remedial purpose of the Magnuson-Moss Act." Although the Turners do not make this argument in their appellees' brief, this Court can affirm a trial court's ruling on any valid legal ground, see Smith v. EquifaxServs., Inc., 537 So.2d 463 (Ala. 1988); therefore, we will address this argument. The Turners relied on Randolph v. Green Tree Financial Corp.,178 F.3d 1149 (11th Cir. 1999), in which the United States Court of Appeals for the Eleventh Circuit held that the Truth-in-Lending Act,15 U.S.C. § 1601 et seq., precludes the enforcement of an arbitration agreement that does not address the payment of filing fees or apportionment of the costs of arbitration. Id. The United States Supreme Court expressly overruled the Eleventh Circuit's holding on this issue. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79,121 S.Ct. 513 (2000) (affirming in part and reversing in part the Eleventh Circuit's decision). The Supreme Court reasoned that, even though the arbitration agreement was silent on costs, "[t]he `risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." 531 U.S. at 91,121 S.Ct. at 522. The Supreme Court stated that "[t]o invalidate the agreement on that basis would undermine the `liberal federal policy favoring arbitration agreements.'" 531 U.S. at 91, 121 S.Ct. at 522
(citations omitted).
Consequently, on the authority of Ard and Randolph, the order of the trial court denying arbitration is reversed. This cause is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
Lyons, Brown, Harwood, and Stuart, JJ., concur. *Page 298