902 So.2d 641 (2004)
Gary LEEMAN and Kathryn Leeman
v.
COOK'S PEST CONTROL, INC., et al.
1022063.
Supreme Court of Alabama.
December 3, 2004.
*642 Thomas F. Campbell and Bert J. Miano of Campbell & Baker, LLP, Birmingham; F. Paul Bland, Jr., Trial Lawyers for Public Justice, Washington, D.C.; and Kate Gordon, Trial Lawyers for Public Justice, Oakland, California, for appellants.
Clifton E. Slaten, Mindi C. Robinson, and Jason J. Baird of Slaten & O'Connor, P.C., Montgomery, for appellee Cook's Pest Control, Inc.
BROWN, Justice.
The plaintiffs below, Gary Leeman and Kathryn Leeman, appeal from an order of the Jefferson Circuit Court compelling them to arbitrate their claims against Cook's Pest Control, Inc.; James Aycock, president of Cook's Pest Control; Harold R. Pinckard, a "certified pest operator" for Cook's Pest Control; and Dennis Duggan, a Cook's Pest Control "pest control representative" (hereinafter collectively referred to as "Cook's Pest Control"). We affirm.

Facts and Procedural History
On May 15, 2000, the Leemans closed on a loan to purchase a house for the sum of $220,000. During the closing, the Leemans were presented with numerous documents, including a "Subterranean Termite Control Agreement" with Cook's Pest Control ("the termite agreement"). The termite *643 agreement provided that, for an annual fee of $125, Cook's Pest Control would treat the Leemans' home for termites and would thereafter inspect the house annually for the presence of termites. It also provided that, in the event termites were found in the structure during one of the annual inspections, Cook's Pest Control would retreat the house. In another provision of the termite agreement, entitled "Retreatment Guarantee," Cook's Pest Control stated that it was not responsible for repairing damage to the house caused by wood-destroying organisms.
The termite agreement also contained the following arbitration provision:
"ALTERNATIVE DISPUTE RESOLUTION CLAUSE
"As an inducement to Cook's Pest Control, Inc., [COOK'S] to enter into this Agreement with the Customer, the parties hereto agree as follows:
"(1) ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THE AGREEMENT AND GUARANTEE, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN COOK'S AND CUSTOMER SHALL BE SETTLED BY ARBITRATION IN THE STATE OF CUSTOMER'S RESIDENCE IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE `ARBITRATION RULES OF THE AAA'), AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.
"(2) The parties anticipate that the resources of COOK'S used by COOK'S to perform this Agreement and Guarantee, will come from interstate sources. Therefore, COOK'S and CUSTOMER acknowledge and agree that the Agreement and Guarantee involves `commerce' as defined in the United States Arbitration Act, Title 9, United States Code, `Arbitration,' hereinafter referred to as the `USAA.'
"(3) EXCEPT AS LIMITED HEREINABOVE, COOK'S AND CUSTOMER UNDERSTAND AND AGREE (I) THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (II) THAT PRE-ARBITRATION DISCOVERY IN ARBITRATION PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (III) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (IV) EITHER PARTY'S RIGHT TO APPEAL OR SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION OR MEDIATION SHALL BE IN THE COUNTY OF THE CUSTOMER'S RESIDENCE."
(Capitalization and bracketed material in original.)
Gary was presented with the termite agreement at the closing and he "skimmed through it"; Kathryn actually signed the document and initialed the "Retreatment Guarantee." No representative of Cook's Pest Control was present at the closing. The Leemans, who both have master's degrees, did not contact Cook's Pest Control with any questions regarding the termite agreement, and they did not attempt to negotiate any of its terms, either during or after the closing.
*644 The Leemans renewed the termite agreement the following year. In late 2001, the Leemans discovered a termite infestation and termite damage in their home. They contacted Cook's Pest Control, which confirmed the presence of termites. On December 7, 2001, Cook's Pest Control retreated the house.
On August 19, 2002, the Leemans sued Cook's Pest Control, Aycock, Pinckard, and Duggan, alleging fraud, breach of warranty, negligence, breach of contract, and unjust enrichment. The Leemans also sought unspecified compensatory damages, including damages for mental anguish, as well as punitive damages.
On September 23, 2002, Cook's Pest Control filed a motion to compel arbitration pursuant to the arbitration provision found in the termite agreement. The Leemans moved the trial court to permit discovery on issues pertaining to arbitration, which the trial court granted. On June 6, 2003, the Leemans filed an opposition to Cook's Pest Control's motion to compel arbitration. In an order entered on July 23, 2003, the trial court granted Cook's Pest Control's motion to compel arbitration. The Leemans appeal.

Standard of Review
"`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala.1999). Furthermore:
"`A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."'
"Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted))."
Vann v. First Cmty. Credit Corp., 834 So.2d 751, 752-53 (Ala.2002).

Discussion
On appeal, the Leemans argue that the arbitration provision found in the termite agreement is unconscionable. Therefore, they argue, the trial court erred in granting Cook's Pest Control's motion to compel arbitration.
Section 2 of the Federal Arbitration Act ("the FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. General contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement without contravening the FAA. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause `upon such grounds as exist at law or in equity for the revocation of any contract.'" (quoting 9 U.S.C. § 2)). However, this Court is precluded "from singling out arbitration provisions for suspect status," and it must instead place such provisions "`upon the *645 same footing as other contracts.'" Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (internal quotation marks omitted in Casarotto)).
"[T]here is nothing inherently unfair or oppressive about arbitration clauses," Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350, 1352 (11th Cir.1986), and arbitration agreements are not in themselves unconscionable, Ex parte McNaughton, 728 So.2d 592, 597-98 (Ala.1998). Instead, unconscionability is an affirmative defense, and the party asserting the defense bears the burden of proof. Conseco Fin. v. Murphy, 841 So.2d 1241, 1245 (Ala.2002).
This Court has stated that "`[a]n unconscionable ... contractual provision is defined as a ... provision "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."'" Southern United Fire Ins. Co. v. Howard, 775 So.2d 156, 163 (Ala.2000) (quoting Layne v. Garner, 612 So.2d 404, 408 (Ala.1992), quoting in turn Lloyd v. Service Corp. of Alabama, 453 So.2d 735, 739 (Ala.1984), and Hume v. United States, 132 U.S. 406, 410, 10 S.Ct. 134, 33 L.Ed. 393 (1889)). In Layne v. Garner, this Court first undertook to announce an explicit standard for determining whether a contract or contractual provision is unconscionable:
"In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract."
612 So.2d at 408. "For ease of discussion," this Court has at times reduced the Layne v. Garner test to two essential elements:
"(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." American Gen. Fin., Inc. v. Branch, 793 So.2d 738, 748 (Ala.2000). In addition, this Court recognizes a distinction between "substantive unconscionability" and "procedural unconscionability." Substantive unconscionability
"`relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the non-drafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.'"
Ex parte Thicklin, 824 So.2d 723, 731 (Ala.2002) (emphasis omitted) (quoting Ex parte Foster, 758 So.2d 516, 520 n. 4 (Ala.1999), quoting in turn 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed.1998)). Procedural unconscionability, on the other hand, "deals with `procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.'" Thicklin, 824 So.2d at 731 (quoting Foster, 758 So.2d at 520 n. 4).

*646 Procedural Unconscionability

The Leemans argue that the arbitration provision in the termite agreement is unconscionable because it was "imposed through [Cook's Pest Control's] overwhelming bargaining power." Leemans' brief at 32. Specifically, the Leemans maintain that they had no meaningful choice in that they could not obtain a termite-control agreement similar to their termite agreement with Cook's Pest Control without assenting to an arbitration agreement and that they were unable to negotiate with Cook's Pest Control to remove the arbitration provision from the termite agreement.
In support of their argument, the Leemans cite Branch, supra, and Anderson v. Ashby, 873 So.2d 168 (Ala.2003). In those cases, this Court considered as an indicium of unconscionability whether the consumer had the ability to contract with other providers for the same services or product without assenting to an arbitration provision. In Branch, the plaintiff Branch had borrowed money from a finance company, and the note Branch signed contained an arbitration provision. Branch later sued the finance company, which in turn moved the trial court to compel arbitration pursuant to the arbitration provision found in the note. The trial court denied the motion, holding that the arbitration provision Branch signed was unconscionable.
This Court affirmed the trial court's order denying the motion to compel arbitration. In determining that the arbitration provision was unconscionable, we stated: "A primary indicium of unconscionability in the modern consumer-transaction context is whether the consumer has the ability `to obtain the product made the basis of [the] action' without signing an arbitration clause." Branch, 793 So.2d at 750 (quoting Green Tree Fin. Corp. of Alabama v. Wampler, 749 So.2d 409, 415 (Ala.1999)). Branch testified by affidavit that she was required to sign forms provided by the finance company and that the market was closed to consumers seeking similar loans without agreeing to arbitration provisions. Specifically, Branch presented evidence indicating that she had surveyed 8 of the 16 loan providers available to her and that only 1 of the 8 surveyed offered its services without requiring the borrower to assent to an arbitration provision. This Court thus concluded that Branch had demonstrated that she could not obtain, without a considerable expenditure of time and resources, the service she desired without assenting to an arbitration provision. 793 So.2d at 751.
The Leemans argue that, like the plaintiff in Branch, they had no right to negotiate the terms of the termite agreement and that they would not have been able to find a termite-control agreement with another pest-control provider comparable to the termite agreement without assenting to an arbitration provision. In support of their argument, the Leemans produced portions of a record in another case that included copies of various pest-control agreements from five other pest-control providers, all of which contain an arbitration provision. This, they argue, "establishes that at the time the Leemans signed the [termite agreement], nearly every other pest-control company in Alabama also required its consumers to agree to mandatory, binding, pre-dispute arbitration." Thus, they maintain, Cook's Pest Control had overwhelming bargaining power and they had no meaningful choice in the transaction. We disagree.
The consumer in Branch, by providing evidence indicating that of the 16 available loan providers in her geographical area, 8 were sampled and only 1 of those offered a loan without requiring the borrower to assent to an arbitration provision, demonstrated *647 that she could not obtain a loan without assenting to an arbitration provision. The Leemans, on the other hand, have presented evidence indicating only that five of the untold total number of pest-control-service providers available to the Leemans in the Birmingham metropolitan area required the consumer to assent to an arbitration agreement. Because the Leemans do not provide the total number of pest-control-service providers available to them, this Court is unable to conclude that the Leemans could not have secured a termite-control agreement without considerable expenditure of time and resources. Therefore, they have not met their burden on this issue.
Moreover, it is undisputed that the Leemans did not attempt to secure a termite-control agreement from another termite-control-service provider. Instead, they read and accepted the termite agreement offered at the closing without question. Thus, it is difficult to conclude that the Leemans lacked a meaningful choiceand that this lack of choice could render the arbitration provision unconscionablewhen in fact they never undertook to actually make a choice.[1] See Branch, 793 So.2d at 752 (refusing to hold in a consolidated appeal an arbitration provision unconscionable, in part, because the plaintiff "did not shop around for a loan that did not involve an agreement to arbitrate"); see also Conseco Fin. Corp.-Alabama v. Boone, 838 So.2d 370, 373 (Ala.2002) (holding, in part, that the plaintiffs made no showing that they lacked a meaningful choice because the record did not demonstrate the plaintiffs attempted to "shop around" for a contract that did not call for arbitration); Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497, 504 (Ala.1999) (holding as "meritless" the argument that the plaintiffs had no meaningful choice in assenting to arbitration because they failed to "present evidence indicating that they could not have independently secured financing by an agreement that would not have required arbitration"); and Pitchford v. AmSouth Bank, 285 F.Supp.2d 1286, 1295 (M.D.Ala.2003) ("Although a party would not have to spend a considerable amount of time and effort to find alternatives, Alabama Courts, nevertheless, do require that a party `shop around' in order to show that there was no meaningful alternative.").
The Leemans argue, however, that under Anderson they were not required to actually "shop around" for a termite-control agreement that lacked an arbitration provision. Their argument misstates our holding in Anderson. In that case, we noted:
"[T]he facts of this case do not logically present an issue whether the Ashbys should have `actually shopped around' for a lender that would not require that they execute an arbitration agreement. The Ashbys' inability to read the documents and agent Anderson's alleged failure to mention the `arbitration agreement' when he undertook and purported to explain the documents to them deprived the Ashbys of any reason to `shop around' for such a lender."
Anderson, 873 So.2d at 179. Thus, we did not in Anderson reach the issue whether a party must "shop around" for an agreement that does not contain an arbitration *648 provision before an agreement containing an arbitration provision will be held unconscionable on the basis that the party had no meaningful choice.
The Leemans were not denied the opportunity to "shop around" in this case. In light of their undisputed failure even to attempt to do so, we cannot conclude that they lacked a meaningful choice in assenting to the termite agreement.
The Leemans also maintain that the termite agreement was a contract of adhesion and that they had no input in its drafting and could not negotiate its terms. Thus, they argue, under Anderson, supra, Cook's Pest Control is deemed to have had overwhelming bargaining power. As support for their argument, the Leemans produced responses to interrogatories in which Cook's Pest Control answered that, in an attempt to maintain uniformity, it did not negotiate the terms of its contracts and, as a "general rule," did not negotiate the removal of the arbitration provision.
First, it is undisputed that the Leemans did not attempt to negotiate any of the terms of the termite agreement. There is no evidence in the record indicating that the Leemans attempted to contact Cook's Pest Control before the closing to negotiate the terms of the termite agreement, and it is undisputed that they did not attempt to renegotiate the termite agreement after the closing or at the time the agreement was renewed. Instead, the Leemans raised their first objection to the arbitration provision after litigation in this case began.
In Anderson, a majority of this Court held that the plaintiffs in that case had demonstrated that the defendant had overwhelming bargaining power by presenting sufficient evidence (1) that the plaintiffs could not have acquired similar services in their geographic area without assenting to an arbitration provision; (2) that the plaintiffs were unsophisticated, uneducated, and illiterate; (3) that one of the defendants had misrepresented to the plaintiffs the existence of the arbitration provision; and (4) that the plaintiffs had no input in negotiating any of the terms of the contract. Anderson, 873 So.2d at 169, 177-79. In this case, the Leemans have failed to demonstrate that they could not have obtained from another pest-control provider a termite-control agreement that did not contain an arbitration provision; the Leemans are not unsophisticated, uneducated, or illiterate;[2] and there is certainly no evidence indicating that they assented to an arbitration provision based on misrepresentations by Cook's Pest Control. Therefore, Anderson is distinguishable.
We hold that the Leemans have not demonstrated procedural unconscionability in this case.

Substantive Unconscionability
The Leemans also argue that the arbitration provision in the termite agreement *649 is substantively unconscionable in that its terms are grossly favorable to Cook's Pest Control. Specifically, the Leemans contend that the costs associated with arbitration under the termite agreement are prohibitive and that the arbitration clause is too broad.

A.
First, the Leemans claim that the costs of arbitration in this case would be excessive. They cite the United States Supreme Court's decision in Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), and this Court's decision in Leonard v. Terminix International Co., 854 So.2d 529, 539 (Ala.2002), for the proposition that an arbitration provision is unconscionable if it imposes excessive costs and thus prevents a party from entering the arbitral forum. See Randolph, 531 U.S. at 90, 121 S.Ct. 513 ("It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration."), and Leonard, 854 So.2d at 539 ("This arbitration agreement is unconscionable because it is a contract of adhesion that restricts the Leonards to a forum where the expense of pursuing their claim far exceeds the amount in controversy.").
The arbitration provision found in the termite agreement requires arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("the Commercial Rules").[3] Evidence included in the record suggests that, under the Commercial Rules, claims of unspecified damages require an initial filing fee of $3,250 and a "case service fee" of $1,250. The Leemans also produced evidence of the costs of an arbitration in an arbitration proceeding involving Cook's Pest Control in which, they allege, the claimants asserted similar claims. In that arbitration proceeding, styled Porter v. Cook's Pest Control, the claimants were required to pay an initial filing fee of $3,250, a case-service fee of $750,[4] mediator compensation of $1,500 (2 days of hearings and 4 hours of study),[5] and arbitrator compensation of $7,450 (9 days of hearings and 15 days of study). Thus, the claimants in that proceeding were obligated to pay $12,950 in fees associated with arbitration. However, the arbitrator ordered Cook's Pest Control to pay fees and expenses to the American Arbitration Association ("the AAA") "totaling" $4,000,[6] arbitrator's fees and expenses "totaling" $9,378.92, and to pay the Porters $4,814.92, representing the Porters' share of the fees and expenses advanced to the AAA. Additionally, the arbitrator awarded the Porters $16,000 in compensation.[7]
The Leemans argue that, in light of the evidence they presented, they would have *650 to pay as much as $4,500 in filing fees and arbitrator compensation as high as $8,000. This is unconscionable, they contend, because their claims are "modest in size," Leemans' brief at 59, and "the ultimate award could easily be less than $20,000." Id. at 55.[8]
Cook's Pest Control argues that the Leemans' counsel, who was counsel for the claimants in Porter, inflated the costs in that arbitration by, it says, spending an inordinate amount of time presenting the case and calling witnesses during the proceedings. Moreover, Cook's Pest Control argues that the Leemans' counsel admitted to the trial court that the purpose of arbitration in Porter was to build an evidentiary record of the costs of arbitration. Indeed, the Leemans' brief states: "The record contains unrebutted testimony that these counsel brought [Porter and other cases] not because it was economically justifiable to do so, but because it was the only way to establish an evidentiary record demonstrating the magnitude of the forum costs that consumers are required to bear in these types of cases." Leemans' brief at 19. Cook's Pest Control asserts that, because the Leemans' counsel wanted to build a record as to the costs of arbitration, he had an incentive to drive up the costs of the Porter arbitration.
Cook's Pest Control also contends that the Leemans have artificially inflated the costs of arbitration in this case. Specifically, Cook's Pest Control argues that, if the Leemans' claims were indeed "modest" or "less than $20,000," then, under the Commercial Rules, their filing fee would be much less than $3,250. According to the fee schedule relied upon by the trial court, a claim between $10,000 and $75,000 requires a $750 filing fee and a $300 case-service fee. The Leemans, however, did not specify their damages, thus requiring a much higher filing fee under the fee schedule. Cook's Pest Control maintains that either the Leemans' damages claim is not "modest"[9] or they intentionally manipulated their claim to enhance the filing fee for purposes of opposing arbitration on the basis that the costs are prohibitive.
We hold that the Leemans have not presented sufficient evidence that those costs of arbitration in this case are excessive or that the costs would otherwise deprive them of the ability to enter the arbitral forum. First, the costs of arbitration in other cases is not sufficient evidence to establish the costs that could occur in this case. See Randolph, 531 U.S. at 91 n. 6, 121 S.Ct. 513 ("Randolph's brief lists fees incurred in cases involving other arbitrations.... None of this information affords a sufficient basis for concluding that Randolph would in fact have incurred substantial costs in the event her claim went to *651 arbitration."). Moreover, according to the Commercial Rules provided in the record and relied upon by the trial court,[10] administrative fees may be reduced or deferred in the event a party to the arbitration can prove extreme hardship. In fact, the rules allow an arbitrator to assess and apportion among the parties the fees and expenses involved in arbitration. See Universal Underwriters Life Ins. Co. v. Dutton, 736 So.2d 564, 570 (Ala.1999) (noting that the Commercial Rules allow the arbitrator to apportion, defer, or reduce the administrative fees), and Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 37-38 (Ala.1998) (rejecting the argument that an arbitration filing fee might be a financial hardship on the basis that the Commercial Rules provide a mechanism to defer or reduce the administrative fees or apportion all fees to one party or the other). Indeed, the arbitrator's award in Porter appears to assess all of the administrative fees to Cook's Pest Control; it also ordered that Cook's Pest Control pay the arbitrator's compensation. Thus, the Leemans' own evidence regarding Porter establishes that the Leemans may not have to pay any of the costs of arbitration. "The `risk' that [a party] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Randolph, 531 U.S. at 91, 121 S.Ct. 513. Therefore, the Leemans have not met their burden.
Additionally, the Leemans have not demonstrated that they would not be able to afford the initial costs of filing a claim for arbitration. Although the Leemans present the affidavits of various attorneys who each testified that he would not take a case to arbitration or advance arbitration filing fees, we do not find those assertions relevant to substantive unconscionability. See Young v. Jim Walter Homes, Inc., 110 F.Supp.2d 1344, 1349 (M.D.Ala.2000) ("[C]ounsel's preference for litigation does not render this arbitration agreement unconscionable. The fact that counsel is willing to advance the cost of litigation, but not arbitration, does not in any way indicate to this court that the parties' agreement to arbitrate disputes arising from the sales contract is unenforceable."). Moreover, there is no evidence in the record indicating the Leemans' income or wealth or otherwise proving that they would not be able to pay the initial fees and costs of arbitration.[11]
The Leemans have not shown that the costs of arbitration in this case are so excessive as to deny them the ability to pursue their claim in arbitration. Therefore, they have not demonstrated that the arbitration provision in the termite agreement *652 is unconscionable on that basis. See Ex parte Thicklin, 824 So.2d at 735 (rejecting the argument that arbitration under the Commercial Rules was unconscionable "from a financial standpoint" because the plaintiff "d[id] not provide any evidence, such as her income, her family's expenses, or the estimated costs of the arbitration procedure").

B.
The Leemans also contend that the arbitration provision is too broad. In Branch, this Court considered as an indicium of unconscionability the fact that the arbitration provision at issue was broadly worded:
"The first indicium of unconscionability is the breadth of the clause. The arbitration provision in Branch's contract is unusually broad in scope and application. It applies to every `dispute[] or controversy[] ... relating to' every actual or potential transactionwhether past, present, or futureand to every person, whether signatory or nonsignatory to any document, involved in such a transaction between the parties. (Emphasis added.) Thus, it applies to every cause of action that could conceivably arise in favor of Branch, and to every individual against whom a claim could conceivably be brought. This Court has often recognized that the phrase `relating to' is one of the broadest of the coverage provisions."
Branch, 793 So.2d at 748. The arbitration provision in the termite agreement states: "Any dispute, controversy or claim arising out of or relating to the agreement and guarantee, or the breach thereof, or arising out of any prior or future dealings between [Cook's Pest Control] and customer shall be settled by arbitration." (Capitalization omitted.) The Leemans argue that this provision is similar to the provision this Court found unconscionable in Branch.
First, it is not clear how the fact that the arbitration provision is "broad" requires this Court to conclude that it is thus grossly favorable to one particular party. An arbitration provision constitutes an agreement between the parties to submit their disputes to arbitration, as opposed to litigation. It is only natural that, pursuant to that preference, an arbitration provision be designed to actually cover many potential disputes between the parties, not just some disputes.
In any event, while our decision in Branch considered the breadth of the arbitration provision as an indicium of unconscionability, this Court has subsequently noted that our consideration of that factor in Branch also took into account numerous other factors:
"Walser points out that this Court in American General Finance, Inc. v. Branch, 793 So.2d 738, 740 (Ala.2000), concluded that the language `"all claims, disputes, or controversies of every kind and nature between Borrower(s) and Lender shall be resolved by binding arbitration, including ... those arising out of or relating to the transaction(s) evidenced by this agreement"' satisfied the first prong of the unconscionability test. However, in American General Finance, supra, this Court did not rely solely on the breadth of the arbitration clause; rather, it noted that there were several indicia that the provisions of the contract were `so grossly favorable... as to pass the first prong' of the unconscionability test. 793 So.2d at 750. The Court identified `the breadth of the clause,' `the provision purporting to invest the arbitrator with the threshold issues of arbitrability,' `the provision exempting the Lenders from the duty to arbitrate and expressly reserving for *653 them the right to try to a jury their claims against Branch up to $10,000,' and the `provision purporting to limit the right of the arbitrator to award an amount "exceed[ing] five times the amount of economic loss."' 793 So.2d at 749. (Emphasis omitted.)
"Although Walser argues that the scope of the arbitration agreement in the construction and sales contract is overly broad, she makes no showing that it assigned the threshold issues of arbitrability to the arbitrator, that there was a lack of mutuality of remedies, that it set a limit on the amount the arbitrator could award, or that any other terms of the agreement were `grossly favorable' to the company. Thus, the number and degree of `grossly favorable' terms found in the contract in American General Finance are not present here."
Steele v. Walser, 880 So.2d 1123, 1129 (Ala.2003). We hold that the breadth of the arbitration provision in this case, alone, does not demonstrate terms grossly favorable to Cook's Pest Control or otherwise establish unconscionability.

Conclusion
The Leemans have not established that the arbitration provision in the termite agreement was unconscionable. Therefore, the Leemans have not demonstrated that the trial court, in compelling arbitration, erred on a factual or legal issue to their substantial prejudice. Vann, supra. Therefore, the order of the trial court compelling arbitration is affirmed.
AFFIRMED.
NABERS, C.J., and HOUSTON, WOODALL, and STUART, JJ., concur.
SEE, J., concurs specially.
JOHNSTONE and HARWOOD, JJ., dissent.
SEE, Justice (concurring specially).
I agree with the main opinion that the Leemans failed to prove that the arbitration provision in the termite agreement was substantively unconscionable. I also agree with the main opinion that the Leemans failed to demonstrate procedural unconscionability in that (1) they did not provide this Court with sufficient information from which to determine whether the Leemans could have secured a termite-control agreement from another pest-control provider without considerable expenditure of time and money, and (2) they did not attempt to negotiate with Cook's Pest Control to remove the arbitration provision from the termite agreement. I write specially simply to note that, even had the Leemans successfully shown both that they could not have, without considerable expenditure of time and money, secured a termite-control agreement without an arbitration provision from another pest-control provider and that they unsuccessfully attempted to negotiate with Cook's Pest Control to have the arbitration provision removed from their contract, that showing, while necessary, would not have been sufficient to establish procedural unconscionability. See 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed.1998).
NOTES
[1] There is no evidence in the record indicating precisely why the Leemans chose Cook's Pest Control, or why the termite agreement was produced at the closing. However, Gary did testify in deposition that the Leemans wished to use the same termite-control agreement the previous owners of the house had had, which was apparently with Cook's Pest Control. Thus, the record suggests that the Leemans specifically desired a termite-control agreement from Cook's Pest Control over other providers.
[2] In Layne v. Garner, supra, this Court, in determining whether the contract at issue in that case was unconscionable, considered whether the party seeking rescission was "unsophisticated and/or uneducated." 612 So.2d at 408. See also Harold Allen's Mobile Home Factory Outlet, Inc. v. Butler, 825 So.2d 779, 783 (Ala.2002) (quoting Layne for the proposition that rescission of a contract as unconscionable is usually an extraordinary remedy reserved for the protection of the "unsophisticated and uneducated"). Gary Leeman and Kathryn Leeman both have master's degrees and work as educators. Gary indicated that he "skimmed through" the termite agreement at the closing, and Kathryn both signed and initialed it. "The law is ... clear that ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby." Power Equip. Co. v. First Alabama Bank, 585 So.2d 1291, 1296 (Ala.1991).
[3] There appears to be no dispute among the parties that the Commercial Rules apply in this case.
[4] The case-service fee at the time the Porter case was arbitrated was lower than the fee the Leemans will now have to pay.
[5] It is not clear why a mediator fee was incurred in Porter, or whether such a fee would be necessary in the Leemans' case.
[6] This amount appears to represent the initial filing fee of $3,250 and the case-service fee of $750.
[7] The arbitrator's award in Porter, which is found in the record, appears to assess all of the costs of arbitration to Cook's Pest Control. We note that the Leemans' assertions regarding the total amount of fees and expenses in Porter appear to conflict with the "total" figures recited in the arbitrator's award.
[8] The Leemans also produced evidence indicating the costs of arbitration in an arbitration proceeding entitled Wunderlich v. Cook's Pest Control. Apparently, Wunderlich was resolved after the record in this case was completed. The Leemans claim that the claimant in Wunderlich received a "modest" recovery but do not explain the ultimate award or how the fees and expenses of the arbitration were apportioned among the parties. Therefore, the Leemans' assertions regarding Wunderlich are not helpful in explaining the costs of arbitration. Additionally, the Leemans also presented some evidence of the fees and expenses of arbitrations in three other arbitration proceedings; however, it appears that all of those proceedings settled before arbitration was completed, and the record does not indicate the result or which party ultimately bore the costs of arbitration. Therefore, those proceedings are also not instructive as to the potential costs of arbitration.
[9] The Leemans' complaint seeks damages for mental anguish, as well as punitive damages. Additionally, Gary Leeman testified in deposition that he did not know if the damages they suffered exceeded $1,000,000.
[10] Those rules are labeled "As Amended and Effective on September 1, 2000."
[11] Cook's Pest Control asserts that it has agreed to pay most of the filing fee required to be paid by the Commercial Rules. Attached to Cook's Pest Control's brief is a letter from counsel for Cook's Pest Control to the Leemans' counsel indicating that Cook's Pest Control will pay all but $150 of the filing fee. This letter is dated December 10, 2003, after the record in this case was completed. The Leemans have not moved to strike this letter from Cook's Pest Control's brief and instead acknowledge in their reply brief that Cook's Pest Control has made this offer. This Court generally does not consider materials outside the record, see Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995) ("This Court is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court."), but see Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., Inc., 851 So.2d 466, 471 n. 3 (Ala.2002) (taking notice of materials attached to a brief that were not part of the record when none of the parties disputed the facts presented by the materials). However, we need not consider the significance of this evidence, because we hold that the Leemans have not otherwise proven that the costs of arbitration would render the arbitration provision unconscionable.