BOLIN, Justice.
Robert 0. Newell appeals from an order of the Mobile Circuit Court granting a motion to, compel arbitration filed by SCI Alabama Funeral Services, LLC, and Richard T. Johnson III (hereinafter collectively referred to ás “SCI”).
Facts and Procedural History
Newell’s wife Lisa passed away at their home on November 17, 2013. Newell telephoned E-911, and an ambulance and the sheriffs department soon arrived. According to Newell, he requested that Lisa’s body be transported to Mobile Memorial *328 Gardens Funeral Home. However, unbeknownst to Newell, Lisa’s body was transported to Radney Funeral Home.[1]
The following day Newell, accompanied by his sister, two daughters, and a son-in-law, went to Mobile Memorial Gardens Funeral Home to make the final arrangements for Lisa. Newell testified that he asked his family to accompany him because he was distraught over Lisa’s death. When Newell and the others arrived at Mobile Memorial Gardens Funeral Home they met with Richard T. Johnson III, an employee of Mobile Memorial Gardens. Johnson informed Newell at that time that Lisa’s body had been transported to Rad-ney Funeral Home instead of Mobile Memorial Gardens Funeral Home. According to Newell, Johnson informed him that Lisa’s body had been transported to Rad-ney instead of Mobile Memorial Gardens because Radney was now a part of the Dignity Memorial Company and because Mobile Memorial Gardens did not have a crematory service. Newell stated that he was upset when he learned that Lisa’s body had been transported to Radney Funeral Home instead of Mobile Memorial Gardens Funeral Home.
Newell informed Johnson during the meeting that he wanted Lisa’s remains cremated and that he wanted to conclude the process as soon as possible. Johnson responded that they could return Lisa’s ashes to Newell within 5 to 10 days. According to Newell, Johnson then began asking him a series of questions from a “checklist” that Newell said he found “very insensitive,” including whether he wanted to pay to have Lisa’s eyes and mouth sewn shut during the cremation process. Newell elected not to have Lisa’s body embalmed because Johnson had represented that Lisa’s ashes would be returned to him in 5 to 10 days. After Newell answered the questions, he executed a contract providing for the disposition of Lisa’s remains by cremation.
The contract contained immediately above the signature lines a section entitled “NOTICES TO PURCHASER/CO-PURCHASER.” Within that section appeared the following:
“SEE PART THREE FOR TERMS AND CONDITIONS THAT ARE PART OF THIS AGREEMENT. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS AGREEMENT.
“BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT ANY CLAIM YOU MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A COURT OR JURY TRIAL AS WELL AS YOUR RIGHT OF APPEAL.”
(Capitalization in original.) The contract contains in part three a section entitled “TERMS AND CONDITIONS.” This section contains the arbitration provision, which provides:
“ARBITRATION: YOU AGREE THAT ANY CLAIM YOU MAY HAVE RELATING TO THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT (INCLUDING ANY CLAIM OR CONTROVERSY REGARDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RE *329 SOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE APPLICABLE RULES OF THE AMERICAN ARBITRATION ASSOCIATION (‘AAA’); PROVIDED, HOWEVER, THAT THE FOREGOING REFERENCE TO THE AAA RULES SHALL NOT BE DEEMED TO REQUIRE ANY FILING WITH THAT ORGANIZATION, NOR ANY DIRECT INVOLVEMENT OF THAT ORGANIZATION. THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES. IF THE PARTIES FAIL TO OR ARE UNABLE TO AGREE ON THE SELECTION ' OF AN APPROPRIATE ARBITRATOR, THE AAA SHALL SELECT THE ARBITRATOR PURSUANT TO ITS RULES AND PROCEDURES UPON THE APPLICATION OF ONE OR BOTH PARTIES. THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, ANY PERSON WHO CLAIMS TO BE A THIRD PARTY BENEFICIARY OF THIS AGREEMENT, ANY OF THE SELLER’S EMPLOYEES OR AGENTS, ANY OF THE SELLER’S PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, EXCEPT AS MAY BE REQUIRED BY LAW, NEITHER PÁRTY NOR AN ARBITRATOR MAY DISCLOSE THE EXISTENCE, CONTENT, OR RESULTS OF ANY ARBITRATION .HEREUNDER WITHOUT THE PRIOR WRITTEN CONSENT OF BOTH PARTIES.”
(Capitalization in original.) The contract also requested that Newell provide his Social Security number directly below the signature line; however, Newell wrote “refused” on the line provided for the Social Security number.
Newell states that after Lisa’s memorial service on November 21, 2013, SCI did not return any of his telephone calls or e-mails inquiring as to the status of Lisa’s remains. Newell eventually Went to Radney Funeral Home on December 4, 2013, to obtain an answer regarding the status of Lisa’s remains. Newell learned at that time that Lisa had,not yet been cremated because the funeral home had not yet received the death certificate from a physician. Newell stated that at that time he was so upset over the lack of communication and the knowledge of the status of Lisa’s remains that he requested that his sister re-identify Lisa’s remains. Newell alleged that he was emotionally distraught over the potential state of Lisa’s remains because, based on Johnson’s representation that she would be cremated within 5 to 10 days, he had elected not to embalm her. Lisa’s ashes were ultimately returned to Newell on December 6, 2013.
On November 17,2015, Newell sued SCI alleging negligence, wantonness, the tort of outrage, and fraud. On March 8, 2016, SCI moved the trial court to compel arbitration. On May 12, 2016, Newell filed a response in opposition to the motion to compel arbitration or, in the alternative, seeking discovery relating to arbitration, arguing that the arbitration provision was unconscionable. Specifically, Newell argued that the terms of the arbitration provision were grossly favorable to SCI, that SCI had overwhelming bargaining power over a grieving husband, and that the arbitration provision violated public policy. On May 31, 2016, the trial court entered an order granting SCI’s motion to compel arbitration. Newell appeals.
Standard of Review
This Court’s standard of review of a ruling on a motion to compel arbitration is well settled:
*330 “ ‘This Court reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id. “[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing).’ ”
Elizabeth Homes, L.L.C. v. Gantt, 882 So.2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000)).
Discussion
Newell argues that the arbitration provision in part three of the contract is unconscionable, and therefore void, because, he says, the terms of the -provision are grossly favorable to SCI. “Unconscion-ability is an affirmative defense, Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 415 (Ala. 1999), and the party asserting the defense bears the burden of proof. Ex parte Napier, 723 So.2d 49, 52-53 (Ala. 1998).” Fleetwood Enters., 784 So.2d at 281. In order to meet that burden, the party seeking to invalidate an arbitration provision on the basis of unconscionability must establish both procedural and substantive unconscionability, Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1087 (Ala. 2005). As this Court explained in Rigas:
“Substantive unconscionability
“ ‘ “relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.” ’
“Ex parte Thicklin, 824 So.2d 723, 731 (Ala. 2002) (emphasis omitted) (quoting Ex parte Foster, 758 So.2d 516, 520 n. 4 (Ala. 1999), quoting in turn 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 1998)). See also Leeman v. Cook’s Pest Control, Inc., 902 So.2d 641 (Ala. 2004).
“Procedural unconscionability, on the other hand, ‘deals with “procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction.” ’ Thicklin, 824 So.2d at 731 (quoting Foster, 758 So.2d at 520 n. 4, quoting in turn 8 Williston on Contracts § 18:10).”
923 So.2d at 1086-87.
Relying upon Anderson v. Ashby, 873 So.2d 168 (Ala. 2003), Newell initially argues that the arbitration provision was substantively unconscionable.
*331 I.
Newell first contends that the breadth of the arbitration provision meets the standard for substantive unconsciona-bility, because, he says, it reaches every possible action the party opposing arbitration may have against the party seeking to compel arbitration and protects every individual against whom a claim could be brought. The arbitration provision in Anderson provided:
“‘Borrower(s) and Lender agree that, except as otherwise set forth in this provision, all claims, disputes, or controversies of every kind and nature between Borrower(s) and Lender shall be resolved by arbitration including (i) those based on contract, tort or statute, (ii) those arising out of or relating to the transaction(s) evidenced by this agreement, the disclosures relating to this agreement, the Federal Disclosure Statement, any insurance certificates or policies, any documents executed at or about the same time this agreement was executed or (iii) those arising out of, [or], relating to any other prior, proposed or-actual loan or extension of credit (and the relationships which result from these transactions or any other previous transactions between Borrower(s) and Lender). Borrower(s) and Lender further agree that all issues and disputes as to the arbitrability of claims must also be resolved by the arbitrator.
“‘BORROWERS) AND LENDER UNDERSTAND THAT EACH HAS THE RIGHT TO LITIGATE SUCH DISPUTES THROUGH A COURT, AND BORROWER(S) AND LENDER VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL OR JUDGE TRIAL OF SUCH DISPUTES.
[[Image here]]
“‘BORROWER(S) AND LENDER AGREE THAT THE ARBITRATOR MAY AWARD PUNITIVE DAMAGES ONLY UNDER CIRCUMSTANCES WHERE A COURT OF COMPETENT JURISDICTION COULD AWARD SUCH DAMAGES. HOWEVER, IN NO EVENT SHALL AN AWARD OF DAMAGES EXCEED FIVE (5) TIMES THE ECONOMIC LOSS SUFFERED BY THE PARTY. BORROWERS) AND LENDER FURTHER AGREE- THAT THE ARBITRATOR SHALL NOT CONDUCT - ANY CLASS-WIDE PROCEEDINGS AND WILL BE RESTRICTED TO RESOLVING THE. INDIVIDUAL DISPUTES BETWEEN THE PARTIES.
“ ‘Borrower(s) and Lender agree that, notwithstanding the foregoing, Lender retains the right to use judicial or self-help remedies (i) to repossess or foreclose on collateral or to enforce the security interests relating to this transaction, and (ii) to pursue collection actions against the Borrower(s) where the amount of the debt is $10,000 or less. The exercise of this right by Lender to pursue judicial or self-help remedies shall not constitute a waiver of Lender’s right to compel the arbitration of any claim or dispute subject, to this arbitration clause—including the filing of a counterclaim by Borrower(s) in a lawsuit filed by Lender.’ ”
873 So.2d at 170. This Court found the arbitration provision in Anderson unconscionable, on the basis that it contained a number of terms grossly favorable to the defendant and indicative .of unconscionability, including:
“1) the breadth of the arbitration agreement, which extends to every cause of action that might conceivably arise in favor of the Ashbys and that applies to every individual or entity against whom *332 the Ashbys might bring a claim; (2) the provision purporting to invest the arbitrator with the threshold issue of arbi-trability; (3) the provision reserving to American General Finance the right to a trial by jury while mandating that the Ashbys arbitrate any and every claim that might arise; and (4) the provision limiting the Ashbys’ right of recovery for , all species of damages to no more than five times the economic loss while preserving American General Finance’s right to seek full redress for its claims.”
Anderson, 873 So.2d at 176-77.
Focusing on the provision in “Notices to Purchaser/Co-Purchaser” that states “BY SIGNING THIS AGREEMENT, YOU ARE AGREEING THAT ANY CLAIM YOU MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION,” Newell argues that, like the arbitration provision in Anderson, this provision is overly broad because it contemplates that every conceivable claim he might possibly have against SCI must be submitted to arbitration. This argument is not well taken.
The provision relied upon by Newell to form the basis of his argument is not the actual arbitration provision. Rather, the provision is contained in. the “Notices to Purchaser/Co-Purchaser” section and informs the signatory that the contract contains an arbitration provision. Further, the “Notices to Purchaser/Co-Purchaser” section expressly informs the signatory that the terms and conditions of the contract are found in part three of the contract. Part three of the contract contains the arbitration provision, which expressly limits it scope to “any claim ... relating to the transaction contemplated by this agreement.” Because the arbitration provision in this case expressly limited its scope to claims relating only to transactions contemplated by the contract of which it was a part and did not extend to every conceivable claim that may have arisen in favor of Newell against SCI, it is distinguishable from the arbitration provision in Anderson. Accordingly, because the scope of the arbitration provision is expressly limited to only those claims “relating to the transaction contemplated by this agreement,” we cannot say that it is so overly broad so as to be unconscionable.
II.
Newell, again relying upon Anderson, next argues that the arbitration provision, which vests the arbitrator with the jurisdiction to determine questions of arbitra-bility, is grossly favorable to SCI and therefore unconscionable. The arbitration provision in Anderson provided that “all issues and disputes as to the arbitrability of claims must also be resolved by the arbitrator.” 873 So.2d at 170. The arbitration provision presently before this Court provides that “any claim or controversy regarding the interpretation of this arbitration clause ... shall be submitted to and finally resolved by mandatory and binding arbitration.”
This Court has upheld arbitration provisions that give the arbitrator the authority to determine arbitrability:
“When deciding the threshold issue whether the court or the arbitrator decides a challenge to the enforcement of an arbitration clause entered into by the parties, the court first must satisfy itself that the terms of the arbitration clause are broad enough to permit the arbitrator to decide issues of arbitrability. However, a determination that, by the terms of the arbitration clause, the arbitrator is to decide issues of arbitrability does not end the inquiry. Where the attack is addressed to the arbitration clause itself, as opposed to the contract as a whole, the court, and not the arbi *333 trator, resolves the issue. But, when the challenge goes to the whole contract, a contract that happens to contain an arbitration clause, the issue of enforceability of the contract, including the arbitration clause, is for the arbitrator to decide.”
Green Tree Fin. Corp. of Alabama v. Wampler, 749 So.2d 409, 413 (Ala. 1999). See also Regions Bank v. Neighbors, 168 So.3d 1 (Ala. 2014); Anderton v. Practice-Monroeville, P.C., 164 So.3d 1094 (Ala. 2014); and CitiFinancial Corp. v. Peoples, 973 So.2d 332, 340 (Ala. 2007).
As discussed above, this Court found unconscionable in Anderson a provision reserving to the arbitrator the authority to determine the threshold issue of arbitrability when considered in conjunction with several other terms in the contract that were grossly favorable to the defendant. Those other grossly favorable terms are not present in this case. Initially, we determined above that the arbitration provision was not. overly broad so as to include every conceivable claim that could arise between Newell and SCI because the arbitration provision in part three is expressly limited to the transaction contemplated by the contract. Second, the arbitration provision in this case contains no terms limiting Newell’s right to the recovery of damages. Accordingly, the terms found in the arbitration provision in this case, in addition to that reserving to the arbitrator the authority to determine any issues of arbitrability, are not so grossly favorable to SCI as to render the arbitration provision unconscionable.
III.
Continuing to rely upon Anderson, New-ell next argues that a defendant’s specific reservation of the right to avail itself of the courts while forcing a plaintiff to arbitrate every conceivable claim is grossly favorable to the defendant and therefore unconscionable. We find Anderson to be easily distinguishable from the'present case. In Anderson, the . defendant expressly reserved in the arbitration provision the “right to use judicial or self-help remedies (i) to repossess or foreclose on collateral or to enforce the security interests relating to this transaction, and (ii) to pursue collection actions against the Borrower(s) where the amount of the debt is $10,000 or less,” 873 So.2d at 170, while requiring the plaintiffs to arbitrate any and every claim that might arise between the parties.
We initially note that there is no express reservation by SCI in'the arbitration provision here of the right to avail itself of the courts, while relegating Newell to arbitration. Although the contract does allow SCI to refer the agreement to an attorney for collections, there is no express reservation of that right in the arbitration provision. In addition to expressly' reserving the right to pursue collections, the arbitration provision in Anderson expressly reserved to the defendant the right to avail itself of the courts in order to pursue foreclosure or repossession of collateral. That factor is not present in this case. Also, as discussed above, the arbitration provision here requires Newell to arbitrate only the claims relating to the transaction contemplated by the agreement between the parties, whereas the arbitration provision in Anderson expressly reserved for the defendant the right to avail itself of the courts in order to pursue the collateral and to allow for collections, while requiring the plaintiff to arbitrate any and every conceivable claim between the parties. Finally, the limitation of the plaintiffs right of recovery contained in the arbitration provision in Anderson is not present in this case. Accordingly, the contract term allowing SCI to refer the agreement to an attorney for collections is not so grossly favorable to SCI as to render the arbitration provision unconscionable.
Based on the foregoing, we conclude that Newell has failed to establish that the *334 arbitration provision in this case was substantively unconscionable. Rigas, supra.
IV.
Newell next argues that the arbitration provision was also “procedurally” unconscionable because, he says, SCI had overwhelming bargaining power over him in that he was distraught and grieving when he executed the contract containing the arbitration provision. As set out .earlier in the quotation from Rigas, procedural unconscionability deals with the procedural deficiencies in the contract-formation process, “‘“such as deception or a refusal to bargain..over contract terms, today often analyzed in terms of whether the imposed-upon party had a meaningful choice about whether and how to enter into the transaction.” ’ ” Leeman v. Cook’s Pest Control, Inc., 902 So.2d 641, 645 (Ala. 2004)(quoting Ex parte Thicklin, 824 So.2d 723, 731 (Ala. 2002), quoting in turn Ex parte Foster, 785 So.2d 516, 520 n.4 (Ala. 1999)). Newell does not claim that SCI deceived him or coerced him into entering into the contract containing the arbitration provision. Rather, Newell claims that, when a contract involves funeral matters, time is of the essence with respect to making final arrangements and it is not practical to require a grieving family member to “shop around” for a funeral home that does not require the execution of an arbitration' agreement. Newell states that he had originally selected Mobile Memorial Gardens Funeral Home as the funeral home he wanted to use and that when he arrived there to make the final arrangements he was notified that Lisa’s remains had been taken to Radney Fuiieral Home without his knowledge. He claims that to require him at that point in time to make an additional choice regarding funeral homes in the state of mind he was in would have required him to expend considerable effort and resources. Newell contends that those considerable efforts and resources should be viewed in the context of a family making final arrangements for a loved one and that, when viewed in that light, SCI held overwhelming bargaining power over him.
“‘Although a party would not have to spend a considerable amount of time and effort to find alternatives, Alabama Courts, nevertheless, do require that a party “shop around” in order to show that there was no meaningful alternative.’ ” Leeman, 902 So.2d at 647 (quoting Pitchford v. AmSouth Bank, 285 F.Supp.2d 1286, 1295 (M.D. Ala. 2003)). Although the sensitive nature of the circumstances in this case are not lost upon this Court, we cannot say that those circumstances would have required Newell to expend considerable effort and resources in seeking an alternate funeral home as he claims'. Nothing in the record indicates that either Newell or one of the other family members accompanying him to make the final arrangements was unable to at least make a telephone call to one of the number of funeral homes in the Mobile area to inquire about funeral services. Newell’s assertions that he did not consider alternatives and that he was in no position to negotiate because of his emotional state must be viewed in light of his express refusal to provide his Social Security number and his negotiation of the services he desired for his wife, including the choice of cremation and the insistence that the cremation process be concluded as soon as possible. Based on the foregoing, we conclude that Newell has failed to establish that the circumstances under which he entered into the contract containing the arbitration provision were procedurally unconscionable. Rigas, supra.
V.
Newell last argues that the arbitration provision in part three of the contract violates public policy. “ ‘The [Federal Arbitration Act] preempts contrary state law (specifically, contrary law based *335 on Ala. Code 1975, § “'8-1-41(3), and public policy) and renders enforceable a written predispute arbitration agreement but only if that agreement appears in a contract evidencing a transaction that “involves” interstate commerce.’” Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala. 2001) (quoting Southern United Fire Ins. Co. v. Knight, 736 So.2d 582, 585-86 (Ala. 1999)). This Court has consistently enforced arbitration agreements where the-following elements are established: (1) “ ‘the existence of a contract calling for- arbitration”’ and (2) “ ‘that contract evidences a transaction affecting interstate commerce.’ ” Kenworth of Mobile, Inc. v Dolphin Line, Inc., 988 So.2d 534, 539-39 (Ala. 2008)(quoting Fleetwood Enters., 784 So.2d at 280).
' In this case, we have before us a contract that includes ah arbitration‘provision that we have upheld as being'valid in the face of challenges based on unconscionability. Newell has made no argument that the contract is not one evidencing a transaction involving interstate commerce. Again, although we realize the sensitive nature of the circumstances surrounding the underlying transaction in this case, we cannot say that the arbitration provision in this case violates public policy.
Conclusion
Based on the forgoing, wé conclude that Newell has failed' to establish that the arbitration provision contained in the contract he executed with SCI for funeral services was unconscionable' or that it violated public policy. Accordingly, we affirm the trial court’s order compelling arbitration of the dispute.
AFFIRMED.
Murdock, Main, Wise, and Bryan, JJ., concur.

. It appears that SCI Alabama Funeral Services, LLC, is an Alabama corporation that owns or is qtherwise affiliated with the Dignity Memorial network of funeral homes, of which Mobile Memorial Gardens Funeral Home and Radney Funeral Home are a part.