BRYAN, Justice.
*36 SCI Alabama Funeral Services, LLC, d/b/a Elmwood Cemetery and Mausoleum ("SCI"); Service Corporation International; SCI Funeral Services, LLC; Elmwood Cemetery Co.; Phyllis Pesseackey; and Jonathan Wheatley (hereinafter referred to collectively as "the defendants") appeal from an order denying their motion to compel arbitration. The circuit court denied the motion to compel because it concluded that the relevant arbitration provision is unconscionable and thus unenforceable. We conclude that the arbitration provision is not unconscionable, and we reverse and remand.
In 2004, Johnnie Hinton ("Johnnie") signed a contract with SCI to purchase the interment rights to two burial spaces in Elmwood Cemetery. The contract contains an arbitration provision stating that "any claim" that Johnnie "may have" against SCI must be resolved by arbitration. The arbitration provision further provides that it
"also applies to any claim or dispute between or among the seller, you as the purchaser, any person who claims to be a third party beneficiary of this agreement, any of the seller's employees or agents, any of the seller's parent, subsidiary, or affiliate corporations, and any of the employees or agents of those parent, subsidiary or affiliate corporations."
In August 2016, Johnnie's husband, Nathaniel Hinton, passed away. Johnnie began to make arrangements to have Nathaniel buried in one of the two burial spaces to which she had acquired interment rights in 2004. SCI then informed Johnnie that someone else had mistakenly been buried in Nathaniel's space. According to Johnnie's complaint, the space she acquired for Nathaniel is next to the space where her father is buried. At Johnnie's request, SCI disinterred the deceased who was buried in the space Johnnie had acquired and buried him elsewhere so that Nathaniel could be buried in the space; Nathaniel was subsequently buried there.
In September 2016, Johnnie sued SCI and the other defendants, alleging breach of contract and several other claims. Johnnie alleged that the corporate defendants were either owners, subsidiaries, or affiliates of each other and that the noncorporate defendants were employees at Elmwood Cemetery.
The defendants moved to compel arbitration, citing the arbitration provision in the contract. Johnnie argued that the arbitration provision is unenforceable because, she said, the contract does not evidence a transaction affecting interstate commerce and the arbitration provision is unconscionable. The circuit court denied the motion to compel, concluding that the arbitration provision is unconscionable. The circuit court based its denial of the motion to compel on the ground of unconscionability alone. The defendants appealed to this Court under Rule 4(d), Ala. R. App. P., which allows an appeal from an order granting or denying a motion to compel arbitration.
" 'This Court's review of an order granting or denying a motion to compel arbitration is de novo. ...'
" United Wisconsin Life Ins. Co. v. Tankersley, 880 So.2d 385, 389 (Ala. 2003). Furthermore:
" ' "A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract *37 calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id.'After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' "
" ' Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (emphasis omitted) ).'
" Vann v. First Cmty. Credit Corp., 834 So.2d 751, 753 (Ala. 2002)."
Cartwright v. Maitland, 30 So.3d 405, 408-09 (Ala. 2009).
The defendants argue that the arbitration provision should be enforced because, they say, they met their two-part burden in moving to compel arbitration and the circuit court erred in concluding that the arbitration provision is unconscionable. Regarding the first part of the defendants' burden, there seems to be no dispute that a contract exists that calls for arbitration. However, before the circuit court, the two sides disputed whether that contract evidences a transaction that affects interstate commerce. The circuit court pretermitted consideration of this issue and instead focused on the unconscionability issue, which we will discuss below. We first address the defendants' argument that they met their burden of establishing that the contract evidences a transaction affecting interstate commerce.
The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), establishes a strong federal policy in favor of arbitration. Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala. 2006) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ). The FAA provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has read the FAA broadly to "provide[ ] for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause.' " Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoting Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ). Congress's power to regulate interstate commerce is quite broad. "It is well established that Congress can regulate three broad categories of activity pursuant to its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce or persons or things in interstate commerce; and (3) those general activities having a substantial effect on interstate commerce." Wolff Motor Co. v. White, 869 So.2d 1129, 1132 (Ala. 2003). " ' "As the decisions of the United States Supreme Court have made clear, there are few, if any, economic or commercial transactions that are beyond the reach of Congress's commerce power." ' " SouthTrust Bank v. Bowen, 959 So.2d 624, 629 (Ala. 2006) (quoting Allied Williams Cos. v. Davis, 901 So.2d 696, 699 (Ala. 2004), quoting in turn Service Corp. Int'l v. Fulmer, 883 So.2d 621, 628 (Ala. 2003) ).
In support of their argument that the transaction here affects interstate commerce, the defendants submitted the affidavit testimony of Pesseackey, an SCI employee and the general manager of Elmwood Cemetery. Pesseackey, one of the defendants, testified that Service Corporation International, a Texas corporation *38 and also a defendant, is the parent corporation of SCI. She further testified that Johnnie's contract was prepared and approved at the parent company's corporate headquarters in Houston, Texas. Pesseackey stated that Johnnie received a certificate of interment rights that was printed on a form Elmwood Cemetery received from the corporate headquarters in Houston. She further stated that the form contains a stamped number that corporate headquarters uses to track the number of certificates delivered to a particular location, including Elmwood Cemetery. According to Pesseackey, "Elmwood Cemetery routinely calls, emails and sends faxes to its Texas affiliates in order to carry out" contracts like Johnnie's. She further testified that the installment payments Johnnie made under the contract were placed in an account that is completely maintained, monitored, and controlled by the corporate headquarters in Houston. Johnnie presented no evidence in opposition to Pesseackey's testimony. Pesseackey's undisputed testimony is more than sufficient to establish that the contract evidences a transaction affecting interstate commerce. Accordingly, the defendants met their burden in moving to compel arbitration.
Once the defendants met their burden, the burden shifted to Johnnie to establish that the arbitration provision is invalid or that it does not apply to the dispute in question. Johnnie argued to the circuit court, as she does to this Court, that the arbitration provision is unconscionable and thus invalid. The circuit court agreed that the arbitration provision is unconscionable and, therefore, refused to enforce it.
"General contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement without contravening the FAA." Leeman v. Cook's Pest Control, Inc., 902 So.2d 641, 644 (Ala. 2004) (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ). "Unconscionability is an affirmative defense, Green Tree Fin. Corp. v. Wampler, 749 So.2d 409, 415 (Ala. 1999), and the party asserting the defense bears the burden of proof. Ex parte Napier, 723 So.2d 49, 52-53 (Ala. 1998)." Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 281 (Ala. 2000). "To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability." Blue Cross Blue Shield of Alabama v. Rigas, 923 So.2d 1077, 1087 (Ala. 2005) (emphasis added). In Rigas, this Court explained:
"Substantive unconscionability
" ' "relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." '
" Ex parte Thicklin, 824 So.2d 723, 731 (Ala. 2002) (emphasis omitted) (quoting Ex parte Foster, 758 So.2d 516, 520 n. 4 (Ala. 1999), quoting in turn 8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 1998) ). See also Leeman v. Cook's Pest Control, Inc., 902 So.2d 641 (Ala. 2004).
*39 "Procedural unconscionability, on the other hand, 'deals with "procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." ' Thicklin, 824 So.2d at 731 (quoting Foster, 758 So.2d at 520 n. 4, quoting in turn 8 Williston on Contracts § 18:10 )."
923 So.2d at 1086-87.
In concluding that the arbitration provision is unconscionable, the circuit court relied on American General Finance, Inc. v. Branch, 793 So.2d 738 (Ala. 2000). We take this opportunity to discuss some of the terminology this Court has used when addressing the issue of unconscionability. In Branch, this Court observed that, to establish that an arbitration provision is unconscionable, one must demonstrate that the terms of the provision are "grossly favorable to a party" that has "overwhelming bargaining power." 793 So.2d at 748. Those two elements were in turn reduced from four factors, discussed in Layne v. Garner, 612 So.2d 404 (Ala. 1992), important in determining whether an arbitration provision is unconscionable: " '(1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided or patently unfair terms in the contract.' " Branch, 793 So.2d at 748 (quoting Layne, 612 So.2d at 408 ). All of these elements and factors, however, are just another way of discussing substantive unconscionability and procedural unconscionability. See Rigas, 923 So.2d at 1086 ("This Court has also recognized a distinction between 'substantive unconscionability' and 'procedural unconscionability' and categorized the factors [in Layne ] as either substantive or procedural."). Whether the terms of the arbitration provision are "grossly favorable to a party" corresponds to substantive unconscionability, and whether a party had "overwhelming bargaining power" corresponds to procedural unconscionability. Thus, although the circuit court did not use the terms "substantive unconscionability" and "procedural unconscionability" in analyzing this case in light of Branch, by tracking the language in Branch the court was in fact analyzing the case in those terms. For ease of discussion, we will use the terms "substantive unconscionability" and "procedural unconscionability" when discussing those concepts as applied in the circuit court's judgment, Branch, and other cases discussed below. This Court's more recent cases addressing the issue whether an arbitration provision is unconscionable have used that terminology. See, e.g., Family Sec. Credit Union v. Etheredge, 238 So.3d 35 (Ala. 2017) ; Newell v. SCI Alabama Funeral Servs., LLC, 233 So.3d 326 (Ala. 2017) ; and African Methodist Episcopal Church, Inc. v. Smith, 217 So.3d 816 (Ala. 2016).
As the circuit court noted, this Court concluded in Branch that the arbitration provision in that case was substantively unconscionable. In making that conclusion, the Court in Branch noted four indications of substantive unconscionability in that case: (1) the breadth of the arbitration agreement, which applied to "every 'dispute[ ] or controversy[ ] ... relating to' every actual or potential transaction-whether past, present, or future-and to every person, whether signatory or nonsignatory to any document, involved in such a transaction between the parties," 793 So.2d at 748 (emphasis omitted); (2) "the provision purporting to invest the arbitrator with the threshold issues of arbitrability";
*40 (3) the provision exempting the lenders from the duty to arbitrate and expressly reserving the lenders' right to a trial by jury of claims up to $10,000 against the borrowers while requiring all the borrowers' claims to be arbitrated; and (4) the provision limiting the borrowers' right of recovery to no more than five times the economic loss while reserving for the lenders the right to full redress for their claims. 793 So.2d at 749-50. See also Anderson v. Ashby, 873 So.2d 168 (Ala. 2003) (relying on Branch in finding an arbitration agreement identical to the one in Branch to be substantively unconscionable). Although the circuit court here relied on Branch, the circuit court concluded, and Johnnie argues on appeal, that only one of the indicators of substantive unconscionability found in Branch-an "overbroad" arbitration provision-is present. However, an "overbroad" arbitration provision alone does not indicate substantive unconscionability.
We addressed this same issue in Steele v. Walser, 880 So.2d 1123 (Ala. 2002). Like the circuit court and Johnnie in this case, the plaintiff in Steele relied on Branch in maintaining that the arbitration provision was substantively unconscionable. However, although the plaintiff "argue[d] that the scope of the arbitration agreement ... is overly broad, she ma[de] no showing" regarding the other indications of substantive unconscionability discussed in Branch. 880 So.2d at 1129. Thus, because the "number and degree of 'grossly favorable' terms found in the contract in [ Branch were] not present" in Steele, the Court in Steele declined to conclude that the arbitration provision was substantively unconscionable. 880 So.2d at 1130.
The same issue arose later in Leeman, and the Court used even stronger language than it had used in Steele in concluding that an allegedly overbroad arbitration provision was not substantively unconscionable on that basis alone. The Court stated:
"The arbitration provision in the [contract providing termite-protection services] states: 'Any dispute, controversy or claim arising out of or relating to the agreement and guarantee, or the breach thereof, or arising out of any prior or future dealings between [Cook's Pest Control] and customer shall be settled by arbitration.' (Capitalization omitted.) The Leemans argue that this provision is similar to the provision this Court found unconscionable in Branch.
"First, it is not clear how the fact that the arbitration provision is 'broad' requires this Court to conclude that it is thus grossly favorable to one particular party. An arbitration provision constitutes an agreement between the parties to submit their disputes to arbitration, as opposed to litigation. It is only natural that, pursuant to that preference, an arbitration provision be designed to actually cover many potential disputes between the parties, not just some disputes.
"In any event, while our decision in Branch considered the breadth of the arbitration provision as an indicium of unconscionability, this Court has subsequently noted [in Steele ] that our consideration of that factor in Branch also took into account numerous other factors ...."
902 So.2d at 652.
After discussing Steele's analysis of Branch, the Court in Leeman concluded that the "breadth of the arbitration provision in this case, alone, does not demonstrate terms grossly favorable to Cook's Pest Control or otherwise establish unconscionability." 902 So.2d at 653. See also Newell, 233 So.3d at 333 (concluding that an arbitration provision was not substantively *41 unconscionable when the provision gave the arbitrator the right to determine arbitrability but the "other grossly favorable terms" present in Branch and Anderson were not present). Similarly, the breadth of the arbitration provision in this case alone does not establish substantive unconscionability.
Both substantive unconscionability and procedural unconscionability must be shown to establish unconscionability as a defense to an arbitration provision; these are separate, independent elements. Rigas, 923 So.2d at 1087. Although there was no actual evidence presented on the issue of procedural unconscionability, the circuit court concluded that enforcing the arbitration provision would be procedurally unconscionable because, the circuit court found, SCI had overwhelming bargaining power over Johnnie. However, because the arbitration provision in this case is not substantively unconscionable, we do not need to consider the issue of procedural unconscionability. See, e.g., African Methodist Episcopal Church, 217 So.3d at 827 ("Inasmuch as [the] substantive-unconscionability arguments are without merit, we may accordingly conclude that the arbitration provision is not unconscionable without examining [the] allegations of procedural unconscionability."). Therefore, we pretermit consideration of this issue.
The circuit court erred in denying the motion to compel arbitration. We therefore reverse the order and remand the case for the circuit court to enter an order granting the motion to compel arbitration.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Parker, Shaw, Wise, Sellers, and Mendheim, JJ., concur.
Main, J., concurs in the result.