IN THE DISTRICT COURT OF THE UNITED STATES FOR THE 

 MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION 

MELLIE DUDLEY, ) 
 ) 
 Plaintiff, ) 
 ) CIVIL ACTION NO. 
 v. ) 2:20cv105-MHT 
 ) (WO) 
AMERICAN FAMILY CARE, ) 
INC., ) 
 ) 
 Defendant. ) 

 OPINION AND ORDER 

 This suit under the Age Discrimination in Employment 
Act, 29 U.S.C. § 621, also known as the ADEA, is before 
the court on the motion of defendant American Family 
Care, Inc. to dismiss plaintiff Mellie Dudley’s complaint 
and compel her to arbitrate her claim. The court has 
federal-question jurisdiction pursuant to 28 U.S.C. 
§ 1331. 
 Dudley worked for many years at Montgomery locations 
of American Family Care, a network of healthcare 
facilities with clinics across the United States. She 
alleges that, near the end of her time at the company, 
her co-workers began harassing and threatening her 
because of her age: She is either 77 or 79 years old. 

See Complaint (doc. no. 1) at ¶ 4 (seventy-seven); Decl. 
of Mellie Dudley (doc. no. 15-1) at ¶ 3 (seventy-nine). 
Dudley says she ultimately left the company in September 
2018 because of this harassment. 

 In May 2018, after she started complaining of age 
discrimination to her supervisors, Dudley was asked to 
sign an agreement to arbitrate “any controversy, dispute 

or claim arising out of or relating to” her employment 
with American Family Care as a condition of remaining in 
her job. Arbitration Agreement (doc. no. 15-2) at 2; see 
also Mem. in Supp. Defs.’ Motion to Dismiss (doc. no. 6) 

at 5. She signed the agreement, and the company now 
seeks to enforce it. For the reasons that follow, the 
court will grant the company’s motion insofar as it seeks 
to compel arbitration. The arbitration agreement is 

enforceable, and Dudley must arbitrate her claim. 
 The Federal Arbitration Act requires a court to stay 
an action when it finds the suit to be subject to a valid 

 2 
arbitration agreement. 9 U.S.C. § 3. American Family 
Care nonetheless moves to dismiss Dudley’s complaint 

because the only claim presented in her complaint is 
subject to arbitration. See Mem. in Supp. Defs.’ Motion 
to Dismiss (doc. no. 6) at 10-11. The cases the company 
cites to support this request show nothing more than that 

the district court has the power to dismiss rather than 
stay an action under these circumstances. The court 
declines to exercise that power. It will deny the motion 

insofar as the company seeks dismissal of this suit, and 
it will instead stay this action pending the arbitration 
of Dudley’s claim. 

 I. LEGAL STANDARD 
 The Federal Arbitration Act instructs that 
arbitration agreements such as the one in this case are 

“valid, irrevocable, and enforceable, save upon such 
grounds as exist at law or in equity for the revocation 
of any contract.” 9 U.S.C. § 2. As the Supreme Court 
has explained, the Act evinces “a liberal federal policy 

 3 
favoring arbitration agreements.” Epic Sys. Corp. v. 
Lewis, 138 S. Ct. 1612, 1621 (2018) (quoting Moses H. 

Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 
24 (1983)). The agreements may be “invalidated by 
‘generally applicable contract defenses’” under state 
contract law, but not by “defenses that apply only to 

arbitration.” AT&T Mobility LLC v. Concepcion, 563 U.S. 
333, 339 (2011) (quoting Dr.’s Assocs., Inc. v. 
Casarotto, 517 U.S. 681, 687 (1996)). 

 However, the United States Supreme Court and the 
Eleventh Circuit Court of Appeals have recognized one 
arbitration-specific defense that is relevant here. An 
arbitration agreement may be unenforceable when “the 

existence of large arbitration costs” would preclude a 
plaintiff from “effectively vindicating her federal 
statutory rights in the arbitral forum.” Green Tree Fin. 
Corp. v. Randolph, 531 U.S. 79. 90 (2000). A party 

seeking to invalidate an agreement based on this 
“effective-vindication” defense bears the burden of 
presenting evidence that shows “(1) ‘the amount of the 

 4 
fees he is likely to incur;’ and (2) ‘his inability to 
pay those fees.’” Escobar v. Celebration Cruise 

Operator, Inc., 805 F.3d 1279, 1291 (11th Cir. 2015) 
(quoting Musnick v. King Motor Co., 325 F.3d 1255, 1259 
(11th Cir. 2003)). Merely showing a “[s]peculative fear 
of high fees” does not meet this requirement. Id. 

 As the Supreme Court of Alabama has explained, “[t]he 
party seeking to compel arbitration has the burden of 
proving the existence of a contract calling for 

arbitration and proving that that contract evidences a 
transaction affecting interstate commerce.” SCI Ala. 
Funeral Servs., LLC v. Hinton, 260 So. 3d 34, 36-37 (Ala. 
2018) (quoting Cartwright v. Maitland, 30 So. 3d 405, 408 

(Ala. 2009)). Once this showing is made, the burden 
shifts to the opposing party “to present evidence that 
the supposed arbitration agreement is not valid or does 
not apply to the dispute in question.” Id. 

 5 
 II. DISCUSSION 
 Dudley neither contests that the arbitration 

agreement affects interstate commerce nor that it bars 
her suit if it is enforceable. She instead argues four 
reasons why the arbitration agreement should not be 
enforced: It constitutes an unconsented waiver of her 

Seventh Amendment jury trial right; it is unconscionable; 
it was signed under duress; and it “will be so gravely 
difficult and inconvenient” that she “will be deprived 

of her day in court.” Response to Motion to Dismiss 
(doc. no. 15) at 3, 5, 11, 12. Although the latter 
defense is not styled as such, the court understands 
Dudley to be raising an effective-vindication argument 

based on the cost of arbitration. 
 Dudley’s first three defenses all run headlong into 
contrary precedent. The Eleventh Circuit has rejected 
her argument that the Seventh Amendment presents a bar 

to the enforcement of arbitration agreements, following 
the reasoning of the Fifth Circuit Court of Appeals 
(among others) that the Constitution confers “only the 

 6 
right to have a jury hear the case once it is determined 
that the litigation should proceed before a court.” 

Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1371- 
72 (11th Cir. 2005) (emphasis in original); see also 
Stinson v. Am.’s Home Place, Inc., 108 F. Supp. 2d 1278, 
1286 (M.D. Ala. 2000) (Thompson, J.) (also rejecting this 

argument). 
 Dudley offers largely identical allegations to 
support her unconscionability and duress arguments. To 

invalidate a contract on the ground of unconscionability, 
a party must show that the agreement was both 
procedurally and substantively unconscionable. See SCI 
Ala. Funeral Servs., 260 So. 3d at 38-39. Dudley argues 

that the agreement was procedurally unconscionable 
because of the inequality of bargaining power and 
business sophistication between herself and American 
Family Care, a lack of time to review the agreement, and 

because she had no other means to secure employment. See 
Response to Motion to Dismiss (doc. no. 15) at 6-9. 
Similarly, she argues that she signed the agreement under 

 7 
duress because she was not represented by counsel in 
signing the agreement; she had a brief period of time to 

review the agreement; and keeping her job depended on 
signing it. See Complaint (doc. no. 1) at ¶ 19; Response 
to Motion to Dismiss (doc. no. 15) at 12. 
 It is unclear how long Dudley actually had to 

consider the agreement and whether she had the option to 
have a lawyer review it. In her response to American 
Family Care’s motion, she says that she was “given mere 

minutes to sign the agreement,” Response to Motion to 
Dismiss (doc. no. 15) at 12, but she provides no further 
support for this time frame and does not mention it in 
her attached declaration, see Decl. of Mellie Dudley 

(doc. no. 15-1) ¶¶ 6, 11-12. Elsewhere, she claims 
simply that she was “asked to sign” the contract 
“[w]ithin minutes of being given the documents,” and that 
“[s]he was not informed that she should review the 

document in detail.” Response to Motion to Dismiss (doc. 
no. 15) at 8. She claims at one point that she was not 
“allowed to have an attorney review the document,” id., 

 8 
but she says in her declaration that she was just “not 
informed that I could contact an attorney to discuss the 

arbitration agreement,” see Decl. of Mellie Dudley (doc. 
no. 15-1) at ¶ 11. 
 In any event, the facts she has alleged do not amount 
to procedural unconscionability, substantive 

unconscionability, or duress under Alabama law. The 
Supreme Court of Alabama has found a lack of procedural 
unconscionability in another sign-or-be-fired case when 

the employee alleged she was told, in her words, that she 
“could not leave the room with the form and that I either 
had to sign it then and there or lose my job.” Potts v. 
Baptist Health Sys., Inc., 853 So. 2d 194, 204-06 (Ala. 

2002). This restriction of the employee’s opportunity 
to review the arbitration agreement in Potts went well 
beyond what Dudley alleges here. The employee in Potts 
could not leave the room where she was handed the 

agreement without signing it; Dudley alleges just that 
she was “told that to keep my job, I needed to sign the 
paperwork” and was “not informed that I could contact an 

 9 
attorney to discuss the arbitration agreement.” Decl. 
of Mellie Dudley (doc. no. 15-1) at ¶¶ 6, 11. The Supreme 

Court of Alabama has elsewhere held that making an 
employee choose between signing a new contract or being 
terminated is not economic duress either. See Clark v. 
Liberty Nat’l Life Ins. Co., 592 So. 2d 564, 567 (Ala. 

1992).1 
 Dudley also argues that the arbitration agreement is 
substantively unconscionable because the agreement 

requires the employee to “bear the expense of his/her own 
legal counsel, if necessary.” Arbitration Agreement 
(doc. no. 15-2) at 2; see Response to Motion to Dismiss 
(doc. no. 15) at 10-11. She maintains that this makes 

the agreement unconscionable because of the possibility 
that the parties would ultimately each have to bear their 
own attorneys’ fees, notwithstanding the agreement’s 

 1. To the extent Dudley maintains that the agreement 
was also invalid because it involved no “additional 
consideration other than her continued employment,” 
Complaint (doc. no. 1) at ¶ 19, the Alabama Supreme 
Court’s decisions in Potts and Clark foreclose this 
argument as well. 
 10 
provision granting the arbitrator power to award 
attorneys’ fees. See Response to Motion to Dismiss (doc. 

no. 15) at 11. 
 A showing of substantive unconscionability requires 
that the terms of the contract be “grossly favorable” to 
one party over the other. SCI Ala. Funeral Servs., 260 

So. 3d at 39. The mere possibility that each side might 
have to bear its own attorneys’ fees does not make the 
agreement grossly favorable to American Family Care. 

Indeed, the Eleventh Circuit has expressly and repeatedly 
rejected the argument that an arbitration agreement is 
made unenforceable simply because it provides a different 
scheme for attorneys’ fees than would be available if the 

plaintiff’s lawsuit proceeded in court. See Summers v. 
Dillard’s, Inc., 351 F.3d 1100, 1101 (11th Cir. 2003) 
(enforcing arbitration of claims under the ADEA and 
Title VII of the Civil Rights Act of 1964, 42 U.S.C. 

§ 2000e-2, when agreement allowed fee recovery “only if 
the plaintiff completely won at arbitration”); Musnick, 
325 F.3d at 1259 (holding that the plaintiff could be 

 11 
compelled to arbitrate his Title VII claim in spite of 
the arbitration agreement’s “loser pays” provision). 

 Finally, the court turns to Dudley’s 
effective-vindication defense. As discussed above, this 
defense requires a party seeking to invalidate an 
arbitration agreement to show “(1) ‘the amount of the 

fees he is likely to incur;’ and (2) ‘his inability to 
pay those fees.’” Escobar, 805 F.3d at 1291 (quoting 
Musnick, 325 F.3d at 1259). 

 Dudley bases her effective-vindication defense on a 
provision of the arbitration agreement that “[American 
Family Care] and Employee shall share equally all of the 
administrative costs associated with the filing and 

prosecution of the Arbitration.” Arbitration Agreement 
(doc. no. 15-2) at 2; Response to Motion to Dismiss (doc. 
no. 15) at 11-12. She argues that she will be precluded 
from vindicating her rights because she “will have 

trouble paying” these fees, which she alleges will 
“include travel for the arbitrator, meals, travel for 

 12 
Mellie Dudley and her attorneys, and the arbitrator’s 
fee.” Response to Motion to Dismiss (doc. no. 15) at 12. 

 The Eleventh Circuit has held that “[t]he mere 
existence of a cost-splitting clause in an arbitration 
agreement does not satisfy a plaintiff’s burden” to show 
the fees he or she is likely to incur, the first step of 

the effective-vindication inquiry. Escobar, 805 F.3d at 
1291. Dudley presents little other evidence to 
demonstrate specifically what costs she would incur if 

she sought to arbitrate her case. Her bare claim that 
arbitration could cost up to $ 2,000 per day “[b]ased on 
research,” Response to Motion to Dismiss (doc. no. 15) 
at 12, is far from sufficient to meet her burden. 

 Moreover, a careful review of the terms of the 
arbitration agreement and the underlying fee schedule 
shows Dudley’s fear that she will accrue half of all 
arbitration expenses to be misplaced. The arbitration 

agreement does not provide that all expenses associated 
with arbitration will be borne equally by the parties. 
It provides specifically that the parties will share 

 13 
equally the “administrative costs” involved in the 
arbitration. The fee schedule of the American 

Arbitration Association (AAA), with whom the arbitration 
will take place under the parties’ agreement, exempts 
arbitrator compensation from the administrative costs 
involved in an arbitration. See AAA Fee Schedule (doc. 

no. 15-4) at 3 (“Arbitrator compensation is not included 
as part of the administrative fees charged by the AAA.”). 
Arbitrator expenses such as travel and meals are 

similarly separated from administrative fees and are 
borne by the employer under the AAA’s rules. Id. 
 The AAA’s fee schedule also provides that the 
component of the filing fee borne by the individual--a 

significant part of the AAA’s “administrative fees”--is 
capped at $ 300, and the schedule appears to allow 
contrary clauses in an arbitration agreement only to 
lower that cap, not to raise it. See AAA Fee Schedule 

(doc. no. 15-4) at 2. Finally, the AAA’s rules allow the 
arbitrator to reduce the fees imposed on a party in the 
event of “extreme hardship.” AAA Employment Arbitration 

 14 
Rules and Mediation Procedures Rule 43; see also Anders 
v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1028-29 

(11th Cir. 2003) (denying an effective-vindication 
defense in part because of an AAA rule allowing reduction 
of fees in cases of extreme hardship). All told, it 
appears the actual fees that Dudley will have to pay 

under the parties’ agreement fall considerably below what 
she argues they would be, and they may be reduced further 
by the arbitrator if the fees would nonetheless be a 

hardship to her. 
 As to the evidence of Dudley’s capacity to pay these 
fees, the Eleventh Circuit, in Suazo v. NCL (Bahamas), 
Ltd., 822 F.3d 543 (11th Cir. 2016), has rejected an 

effective-vindication defense to an arbitration clause 
with a cost-splitting provision--even after it found 
that the plaintiff would have to pay $ 2,000 to begin 
arbitration--because the plaintiff’s affidavit that he 

had trouble finding work and “[did] not have money to pay 
for an arbitrator” was inadequate to show his inability 
to pay. Id. at 554-55. The costs that the Suazo 

 15 
plaintiff was due to accrue considerably outstripped what 
it appears Dudley will have to pay as the court interprets 

the arbitration agreement here. And Dudley’s evidence 
of inability to pay is less substantial than what the 
Suazo plaintiff offered. She provides just a single 
paragraph of evidence on this issue in her declaration, 

in which she states that her current income is “about 1/3 
less than what I was making at [American Family Care],” 
and that she “had difficulty obtaining the funds to cover 

the $400 filing [fee] for the USDC.” Decl. of Mellie 
Dudley (doc. no. 15-1) at ¶ 13.2 This is not enough to 
meet her burden of showing that it would foreclose her 
claim to have to split with American Family Care just the 

administrative fees associated with arbitration. Based 
on the court’s understanding of the agreement’s cost- 
splitting provision, it cannot find that arbitration will 

 2. The court reminds Dudley’s counsel that the 
Alabama Rules of Professional Conduct allow attorneys to 
advance their clients’ filing fees in cases of contingent 
representation like this one, and that the repayment of 
such fees “may be contingent on the outcome of the 
matter.” Ala. Rules of Pro. Conduct r. 1.8(e)(1). 
 16 
impose on Dudley such unmanageable costs that enforcing 
the agreement would preclude her from vindicating her 

rights under the Age Discrimination in Employment Act. 
As such, her effective-vindication defense does not 
succeed. 
 * * * 

 Accordingly, it is ORDERED that: 
 (1) Defendant American Family Care’s motion to 
dismiss and compel arbitration (doc. no. 5) is granted 

in part and denied in part. The motion is granted insofar 
as it seeks to compel arbitration, and it is denied 
insofar as it seeks dismissal of this suit. 
 (2) This action is stayed pending the resolution of 

arbitration under the terms of the agreement signed by 
the parties in this case. 
 (3) On or before the second Monday in January and 
July of each year, counsel for the parties are to file a 

report as to the status of the arbitration proceedings. 

 17 
 (4) The clerk of the court is to close this case 
administratively. 

 DONE, this the 4th day of November, 2020. 
 /s/ Myron H. Thompson 
 UNITED STATES DISTRICT JUDGE 

 18